UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REUBEN M. QUINTON, Jr.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

Case No. 1:16-CV-333

HON. ROBERT J. JONKER

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the

facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was forty-four years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.55, 127.) He earned a GED and previously worked as a roofer, siding installer, and pump helper. (PageID.118, 245.) Plaintiff applied for benefits on August 6, 2013, alleging that he had been disabled since November 4, 2010, due to chronic severe back pain, issues stemming from a back injury and spinal fusion, deterioration of his vertebrae, depression, and

medication side effects of anxiety, dizziness, and blackouts.[1] (PageID.127, 201–214.) Plaintiff's application was denied on October 4, 2013, and Plaintiff subsequently requested a hearing before an ALJ. (PageID.154–160.) On October 1, 2014, Plaintiff appeared with his counsel before ALJ William Reamon for an administrative hearing at which time both Plaintiff and a vocational expert (VE) testified. (PageID.76–125.) On the same day, Plaintiff amended his alleged onset to his application date. (PageID.225.) In a written decision dated October 30, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.55–75.) Thereafter, on February 3, 2016, the Appeals Council declined to review the ALJ's decision. (PageID.44–48.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any

---

[1] Plaintiff previously applied for benefits on July 23, 2003, which resulted in an unfavorable decision by an ALJ on September 7, 2006, and which was not further appealed. (PageID.139–150.) That application is not relevant to the issues raised by Plaintiff in the instant case.

[2]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 416.920(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 416.920(f)).

point in the review, no further finding is required. *See* 20 C.F.R. § 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Reamon determined Plaintiff's claim failed at step five. At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 6, 2013, the date of application. (PageID.60.) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) anxiety disorder; (2) post L4-5 lumbar fusion; (3) back and left lower extremity pain; (4) chronic asthma; and (5) left upper extremity tendon repair with index and middle finger range of motion and strength diminution. (PageID.60–61.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.62–63.) At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments to perform:

> sedentary work as defined in 20 CFR 416.967(a) except no climbing of ladders, ropes and scaffolds; can occasionally climb ramps and stairs; can have no exposure to dangerous moving machinery or unprotected heights; can occasionally balance, stoop, kneel, crouch and crawl; must avoid concentrated exposure to fumes, odors, dusts,

>gases, poor ventilation; can handle and finger with the left upper extremity no more than frequently; can understand, remember and carry out simple instructions and can occasionally interact with the general public, co-workers and supervisors.

(PageID.63.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. (PageID.68–69.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform work as an office clerk (3,000 regional and 105,000 national positions), order clerk (2,000 regional and 70,000 national positions), and machine tender (2,000 regional and 70,000 national positions). (PageID.121–122.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.70.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from August 6, 2013, through October 30, 2014, the date of decision. (PageID.71.)

**DISCUSSION**

On June 6, 2016, the Court entered a Notice in this case regarding the filing of briefs. The Notice, in relevant part, stated that Plaintiff's initial brief "must contain a Statement of Errors, setting forth the specific errors of fact or law upon which Plaintiff seeks reversal or remand. Failure to identify an issue in the Statement of Errors constitutes a waiver of that issue." (PageID.628.) Plaintiff's brief contains only a broad statement that the ALJ's RFC determination is the product of legal error and is unsupported by substantial evidence, and accordingly it falls short of the

requirement that Plaintiff raise specific claims of fact or law within the Statement of Errors.[3] (PageID.636.) Because Plaintiff's counsel has failed to provide a proper Statement of Errors, the Court has reviewed Plaintiff's brief and gleans the following claims of error from its headings:

> 1. The ALJ violated the treating physician rule when considering the opinion of Dr. Noelle Franklyn.
>
> 2. The ALJ played doctor in developing an RFC based only on raw medical data.

The Court will discuss the issues below.[4]

### 1. The ALJ's Analysis of Dr. Franklyn's Physical RFC Opinion Satisfies the Treating Physician Rule.

On June 19, 2014, Dr. Noelle Franklyn, Plaintiff's treating physician, offered an opinion concerning Plaintiff's physical limitations.[5] (PageID.516–517.) Among other things, Dr. Franklyn indicated she had been treating Plaintiff since July 24, 2009. He had a diagnosis of DJD (degenerative joint disease) of the lumbar spine, lumbar disc bulge, and anxiety. His symptoms were chronic back pain that radiated down the left leg. He also had medication side effects of feeling "jitty" and anxious, and also experienced fatigue and memory problems. (PageID.516.) Dr. Franklyn stated that were he to work, Plaintiff would need to recline or lie down in excess of customary breaks. Plaintiff could only walk a distance of one city block before experiencing significant pain. He could only sit for twenty minutes and stand or walk for fifteen to twenty

---

[3] Plaintiff's counsel is advised that future briefs that fail to provide a Statement of Errors alleging specific errors may be stricken.

[4] Plaintiff's initial brief contains an additional argument that the ALJ's RFC determination does not account for the moderate limitations in concentration, persistence, and pace that he had previously found credible. (PageID.655.) Plaintiff withdraws this argument in his reply brief, and accordingly the Court will not consider it. (PageID.678.)

[5] Dr. Franklyn's opinion is contained in a completed two page worksheet in which her obligation was to provide short answers, check a box, or circle one of several possible answers. (PageID.516–517.)

minutes. (PageID.516.) In total, Plaintiff could only sit for two hours and stand or walk for two hours during the workday. Plaintiff would further need to be able to shift positions at will, and take unscheduled breaks every fifteen to twenty minutes for a period of ten minutes. (PageID.516.) Plaintiff could only occasionally lift and carry ten pound weights, and never lift or carry heavier weights. (PageID.517.) Plaintiff could never use his left hand fingers for fine manipulation. (PageID.517.) Dr. Franklyn further indicated Plaintiff would be expected to miss work more than four times a month, and ultimately opined that Plaintiff was not physically capable of working an eight hour day, five days a week, on a sustained basis. (PageID.517.) The ALJ assigned "limited weight" to the opinion. (PageID.68.) Plaintiff claims the ALJ erred in doing so.[6] (PageID.650.) The Court disagrees.

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

---

[6]Dr. Franklyn also offered an opinion regarding Plaintiff's mental limitations that was assigned "no weight" by the ALJ. (PageID.67.) It does not appear Plaintiff contests this aspect of the ALJ's decision. (PageID.650, 674.) To the extent Plaintiff has attempted to assert error, the argument has been waived. "'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

Furthermore, if a treating physician's opinion is given less than controlling weight, the ALJ must still determine the weight to be afforded such. *Gayheart*, 710 F.3d at 375–76. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the

8

treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g.*, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

> The ALJ explained he gave only limited weight to Dr. Franklyn's opinion because:
>
> [I]t is quite clear Dr. Franklyn's physical assessment was based largely if not completely on the claimant's own description of tolerances for activity rather than on notations of physical signs, clinical findings and radiologic evidence, most of which are conspicuously absent from her treating records (See generally Exhibits B3F, B9F & B10F) as required by (20 CFR 416.908) and not simply statements of symptoms. Moreover, the clamant's surgery was generally successful as described in the spinal surgeon's records and he reported a positive response (100% relief) from post-surgical injection therapy and there is no compelling evidence of ongoing lumbar spine dysfunction.

(PageID.68.) The ALJ's reasoning is well supported. While Plaintiff contends that the opinion should be upheld because no other source disagreed with it, the ALJ properly discounted Dr. Franklyn's opinion because it was not supported by any clinical findings and was contradicted by other substantial evidence. Indeed Dr. Franklyn provided little by way of explanation when offering her extreme limitations on the worksheet opinion. A review of a treatment note authored by Dr. Franklyn, and completed the day before she rendered her opinion, contains assertions similar to those contained in the opinion, but is also similarly lacking in any meaningful explanation. (PageID.576–581.) Plaintiff claims that the treatment note merely reflects consistency with the opinion. (PageID.675.) But Plaintiff misses the point. Under the treating physician rule, an ALJ is obligated to give controlling weight to an opinion that is "well-supported by medically acceptable

clinical and laboratory diagnostic techniques" *Gayheart,* 710 F.3d at 375–76.  This opinion is not well-supported.

Moreover, as the ALJ observed, the opinion is inconsistent with the record.  For example, roughly two months before Dr. Franklyn rendered her opinion, Plaintiff stated that he had experienced 100% pain relief from his last pain relief injection, and while the pain was slowly starting to escalate, he was still happy he was able to do activities such as tie his shoes. (PageID.605.)  He also testified that an injection in June helped significantly with pain in his leg. (PageID.86.) The ALJ reasonably found such records to be inconsistent with Dr. Franklyn's opinion. Plaintiff argues there are other records that demonstrate less successful injections, but in each one cited by Plaintiff, there was some amount of relief.  (PageID.463, 610.)  They show Plaintiff had a steady gait that he was able to move better.  (PageID.610.)  In his brief, Plaintiff claims that such relief was only "ephemeral." (PageID.652.)  However, as the ALJ noted, Plaintiff testified that he experienced relief from the shots he received throughout 2013.  (PageID.85–86.)  This is consistent with his statement in July 2013 that the past three months had been "actually pretty good." (PageID.466.)

In short, the ALJ provided good reasons, supported by substantial evidence, for assigning limited weight to Dr. Franklyn's opinion, and in doing so properly considered the factors enumerated in 20 C.F.R. § 416.927(c): primarily, whether the doctor's opinion was consistent with the record and supported by medical signs and laboratory findings. Regardless of the other factors which the regulation required the ALJ to consider—such as the length, nature and extent of the treatment relationship, 20 C.F.R. § 416.927(c)—the evidence mentioned thus far provide substantial evidence for the ALJ's decision to accord Dr. Franklyn's opinion limited weight.  No matter how

long Dr. Franklyn had been treating Plaintiff or how familiar she was with his treatment history, the record supports the ALJ's findings that the doctor's opinion was not well supported and was inconsistent with the pain relief and improvement in function Plaintiff reported after receiving injections. At bottom, the Court does not doubt that Plaintiff is limited because of his impairments, but such limitations are adequately accounted for in the RFC.

### 2. Plaintiff's RFC Is Supported by Substantial Evidence.

Plaintiff next argues that since the ALJ did not adopt Dr. Franklyn's opinion–the only opinion in the record regarding Plaintiff's physical impairments–substantial evidence does not support the ALJ's RFC determination. More specifically, Plaintiff claims the ALJ impermissibly "played doctor" by fashioning an RFC out of raw medical data. (PageID.653–654.) The Court disagrees.

RFC is the most, not the least, a claimant can do despite his impairments. 20 C.F.R. § 416.945(a)(1); *Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 677 n. 3 (6th Cir. 2013); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). It is an administrative finding of fact made by the ALJ on the record as a whole. It is well established that when evaluating the claimant's RFC, the ALJ is not required to base his RFC findings entirely on a physician's opinion. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (quoting SSR 96–5p) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'"). It is the ALJ who has the ultimate responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 416.945(a);

*Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("The ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [their] residual functional capacity.") It is not the ALJ's burden to seek out medical opinions to prove or disprove a disability claim. *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015). Rather, it is Plaintiff's obligation to provide evidence to support his claim of disability. 20 C.F.R § 416.912(c).

The Court is not persuaded by Plaintiff's argument. The ALJ provided a thorough and accurate recitation of the medical evidence of record in determining that Plaintiff was not disabled. (PageID.63–69.) It is clear the ALJ acted squarely within his authority by then determining the RFC based on that objective record and Plaintiff's testimony. Moreover, even though the ALJ assigned the opinion little weight, he still had the benefit of Dr. Franklyn's opinion and found impairments consistent with the doctor's diagnosis. In sum, "nothing suggests that the ALJ quilted together solely subjective determinations in fashioning the RFC." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016); *see also Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 198 (6th Cir. 2004) (finding substantive evidence supporting the RFC when the ALJ failed to adopt the only capacity opinion in the record); *Muscott v. Colvin*, No. CV 14-13890, 2015 WL 7248670, at *4 (E.D. Mich. Oct. 29, 2015), *report and recommendation adopted sub nom*. *Muscott v. Comm'r of Soc. Sec.*, No. 14-13890, 2016 WL 386432 (E.D. Mich. Feb. 2, 2016) (finding that "after the ALJ set forth good reasons for rejecting [the only opinion,] the ALJ did not need to seek out another physician's opinion."). This claim of error is accordingly denied.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision is supported by substantial evidence and therefore will be **AFFIRMED.**

A separate judgment shall issue.


Dated:    January 13, 2017            /s/ Robert J. Jonker
                                      ROBERT J. JONKER
                                      CHIEF UNITED STATES DISTRICT JUDGE